DAVID H. KRAMER State Bar No. 168452
AMIT Q. GRESSEL State Bar No. 307663
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:   (650) 493-9300
Facsimile:   (650) 565-5100
Email:  dkramer@wsgr.com, agressel@wsgr.com

BRIAN M. WILLEN (admitted *pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone:  (212) 999-5800
Facsimile:   (212) 999-5899
Email:  bwillen@wsgr.com

Attorneys for Defendants
Google LLC and YouTube, LLC

UNITED STATES DISTRICT COURT

NORTHER DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ENHANCED ATHLETE INC., | CASE NO.:  4:19-cv-08260-HSG |
| Plaintiff, | **DEFENDANTS GOOGLE LLC AND YOUTUBE, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT** |
| v. | |
| GOOGLE LLC and YOUTUBE, LLC, | Date:         April 30, 2020 |
| Defendants. | Time:         2:00 p.m. |
| | Courtroom: 2, 4th Floor |
| | Judge:        Haywood S. Gilliam Jr. |

# CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

STATEMENT OF REQUESTED RELIEF ............................................................................... 1

STATEMENT OF ISSUES......................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

    I.      FACTUAL BACKGROUND ....................................................................... 3

          A.     The YouTube Service and Terms of Use ...................................... 3

          B.     Enhanced Athlete and Its Legal Troubles ..................................... 4

ARGUMENT ................................................................................................................................ 5

    II.     Section 230 of the Communications Decency Act Bars Plaintiff's Claims ............ 6

          A.     YouTube Is Protected By Section 230(c)(1) .................................. 6

          B.     Section 230(c)(2) Independently Bars Plaintiff's Claims .......................... 8

    III.    Plaintiff Fails to State a Claim for Relief ....................................................... 9

          A.     Plaintiff Fails to State a Claim Under the UCL ........................................ 10

          B.     Plaintiff Cannot Use The Implied Covenant to Rewrite The Parties' Actual Agreement ................................................................. 12

          C.     Plaintiff Fails To State A Claim Under The Lanham Act........................ 13

CONCLUSION ......................................................................................................................... 15

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................................5

5

6

*Bank of the West v. Superior Ct.,*
    2 Cal. 4th 1254 (1992)............................................................................................10

7

*Barnes v. Yahoo!, Inc.,*
    570 F.3d 1096 (9th Cir. 2009)........................................................................2, 7, 8

8

9

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003)................................................................................6, 7

10

11

*Bobbleheads.com, LLC v. Wright Bros., Inc.,*
    259 F. Supp. 3d 1087 (S.D. Cal. 2017) ..................................................................13

12

13

*Brittain v. Twitter, Inc.,*
    2019 WL 110967 (N.D. Cal. June 10, 2019) ...........................................................7

14

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.,*
    2 Cal. 4th 342 (1992)..............................................................................................12

15

16

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999)......................................................................................10, 11

17

18

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
    173 F.3d 725 (9th Cir. 1999) ..................................................................................14

19

*Darnaa, LLC v. Google, Inc.,*
    2015 WL 7753406 (N.D. Cal. Dec. 2, 2015) .........................................................14

20

21

*Domen v. Vimeo, Inc.,*
    2020 WL 217048 (S.D.N.Y. Jan. 15, 2020)................................................3, 7, 8, 9

22

*Dyson, Inc. v. Garry Vacuum, LLC,*
    2010 WL 11595882 (C.D. Cal. July 19, 2010) ................................................10, 11

23

24

*e360Insight, LLC v. Comcast Corp.,*
    546 F. Supp. 2d 605 (N.D. Ill. 2008) .......................................................................9,

25

26

*Ebeid v. Facebook, Inc.,*
    2019 WL 2059662 (N.D. Cal. May 9, 2019) .........................................................10

27

*Fair Hous. Council v. Roommates.com,*
    521 F.3d 157 (9th Cir. 2008)................................................................................2, 8

28

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) ..................................................................................6

*G.U.E. Tech, LLC v. Panasonic Avionics Corp.*,
    2016 WL 6138422 (C.D. Cal Feb 4, 2016) ...........................................................14

*Gonzalez v. Google LLC*,
    335 F. Supp. 3d 1156 (N.D. Cal. 2018) ..................................................................7

*Gonzalez v. Planned Parenthood of L.A.*,
    759 F.3d 1112 (9th Cir. 2014) ................................................................................6

*Green v. YouTube, LLC*,
    2019 WL 1428890 (D.N.H. Mar. 13, 2019) .........................................................10

*Guz v. Bechtel Nat'l Inc.*,
    24 Cal. 4th 317 (2000) ...........................................................................................12

*Holomaxx Techs. v. Microsoft Corp.*,
    783 F. Supp. 2d 1097 (N.D. Cal. 2011) ..................................................................9

*Karimi v. GMAC Mortg.*,
    2011 WL 5914006 (N.D. Cal. Nov. 28, 2011) ......................................................14

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) .........................................................................4, 6, 13

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ................................................................................6

*King v. Facebook, Inc.*,
    2019 WL 4221768 (N.D. Cal. Sept. 5, 2019) .........................................................7

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) .............................................................................6

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ................................................................................4

*Lancaster v. Alphabet Inc.*,
    2016 WL 3648608 (N.D. Cal. July 8, 2016) ................................................ *passim*

*Langdon v. Google, Inc.*,
    474 F. Supp. 2d 622 (D. Del. 2007) ........................................................................9

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) ..............................................................................11

*Nutrition Distribution, LLC v. Enhanced Athlete, Inc.*,
    2:17-cv-01491-TLN-KJN, ECF No. 6 (E.D. Cal. Sept. 13, 2017) ........................4

*Oracle Am., Inc. v. Cedarcrestone, Inc.*,
   938 F. Supp. 2d 895 (N.D. Cal. 2013) ................................................................10

*Prager Univ. v. Google ("Prager I")*,
   2018 WL 1471939 (N.D. Cal. Mar. 26, 2018) ......................................................6

*Prager Univ. v. Google LLC ("Prager II")*,
   2019 Cal. Super. LEXIS 2034 (Cal. Super. Ct. Nov. 19, 2019) ......................11, 12

*Prager Univ. v. Google ("Prager III")*,
   2020 WL 913661 (9th Cir. Feb. 26, 2020)..............................................10, 13, 14

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006)..................................................................................4

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) .............................................................7, 8

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001)..................................................................................6

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,
   100 Cal. App. 4th 44 (2002).................................................................................12

*Sweet v. Google Inc.*,
   2018 WL 1184777 (N.D. Cal. Mar. 7, 2018) ......................................................12

*United States v. Carolina Liquid Chemistries, Corp.*,
   2019 WL 3207851 (N.D. Cal. July 16, 2019) .......................................................4

*United States v. Cavell*,
   Case No. 2:19-cr-00033-JAM ................................................................................4

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)........................................................................10, 13

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997).............................................................................7, 8

**Statutes**

15 U.S.C. § 1125(a)(1) .................................................................................................13

21 U.S.C. §§ 331(a), 333(a)(2).......................................................................................5

47 U.S.C. § 230 ...................................................................................................*passim*

Cal. Bus. and Prof. Code § 17200 ......................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 9(b) ......................................................................11, 14

Federal Rule of Civil Procedure 12(b)(6) ................................................................1, 5, 6

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on April 30, 2020 at 2:00 p.m. in Courtroom 2, 4th Floor, United States District Courthouse, 1301 Clay Street, Oakland, California, before the Honorable Haywood S. Gilliam, Jr. Defendants YouTube, LLC and Google LLC ("Defendants") will, and hereby do, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing Plaintiff Enhanced Athlete's Complaint with prejudice.

The motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities in support thereof; the Proposed Order filed concurrently herewith; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

## STATEMENT OF REQUESTED RELIEF

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 47 U.S.C. § 230(c), Google and YouTube request that the Court dismiss Plaintiff's Complaint without leave to amend.

## STATEMENT OF ISSUES

1.      Whether Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1) & (c)(2), bars Plaintiff's claims.

2.      Whether the Complaint should otherwise be dismissed under Rule 12(b)(6) for failure to state a claim.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

This lawsuit is an improper attempt by Plaintiff Enhanced Athlete—a seller of banned chemical supplements whose facilities have been raided by the federal government and whose CEO is in prison for fraud—to force YouTube to reinstate Plaintiff's channel, which was removed for repeated violations of YouTube's Terms of Service and Community Guidelines. Plaintiff's claims fail as a matter of law and should be dismissed without leave to amend.

Plaintiff describes itself as a "team of Bodybuilders, Chemists, and Innovators" focused on "doing absolutely whatever it takes to come out with the most effective hardcore supplements line

on the market."[1] Unfortunately, Enhanced Athlete interprets "whatever it takes" to mean selling unsafe substances to consumers and attempting to market those substances through YouTube. Specifically, Enhanced Athlete advertised and sold as a weight-loss pill 2,4-Dinitrophenol ("DNP")—a substance developed as a fertilizer or pesticide that the FDA has banned for human consumption. After the FDA raided Enhanced Athlete's facilities in 2017, the U.S. Attorney for the Eastern District of California brought criminal charges against Plaintiff's co-founder Scott Cavell for causing misbranded drugs to be introduced into interstate commerce. Mr. Cavell pled guilty and is currently serving a prison term related to these charges.

In late 2017, while Enhanced Athlete's legal troubles were mounting, YouTube determined that several of Plaintiff's videos violated YouTube's Terms of Service for, among other things, containing mature content and promoting or encouraging unsafe behavior. Ultimately, YouTube removed Plaintiff's entire YouTube channel. Now, over two years later, Plaintiff brings this lawsuit, contending that YouTube somehow violated the law by enforcing its Terms of Service against Enhanced Athlete and trying to protect its users from harm. Plaintiff acknowledges that YouTube "may lawfully regulate or restrain speech" on its service, but contends that YouTube must first satisfy some nebulous standard that would allow Plaintiff to continue to post videos promoting unsafe behaviors. Compl. ¶ 7.

Plaintiff's claims are barred by federal law under two separate provisions of Section 230 of the Communications Decency Act ("CDA"). 47 U.S.C. § 230. Section 230(c)(1) immunizes online service providers like YouTube against any claim that would treat them as the "publisher or speaker" of information provided by another information content provider." 47 U.S.C. § 230(c)(1). Because "publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content," the Ninth Circuit has made clear that "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009) (quoting *Fair Hous. Council v. Roommates.com*, 521 F.3d 157, 1170-71 (9th Cir. 2008) (en banc). As this Court has held in a similar case, that protection applies to claims, like this

---

[1] *See* "Who we are - Enhanced" https://getenhanced.shop/who-we-are/

one, seeking to hold YouTube liable for its decision to remove Plaintiff's videos from its online platform. *Lancaster v. Alphabet Inc*., 2016 WL 3648608, at *2-3 (N.D. Cal. July 8, 2016) (Gilliam, J.).

This case also falls comfortably within the protections of Section 230(c)(2)(A), which provides an independent and overlapping immunity to online service providers actions "voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." 47 U.S.C. § 230(c)(2)(A); *see, e.g*., *Domen v. Vimeo, Inc.,* 2020 WL 217048, at *8 (S.D.N.Y. Jan. 15, 2020) *appeal docketed*, No. 20-616 (Feb. 18, 2020) (dismissing virtually identical claims against online video service for terminating a plaintiff's account).

Beyond that, even if Plaintiff's complaint was not barred by Section 230, the complaint still fails to state a claim for any of the causes of actions it asserts. Plaintiff has no viable claim under California's Unfair Competition Law, because the Complaint identifies no actual unlawful, unfair, or fraudulent act by YouTube. Similarly, Plaintiff's claim for breach of the implied covenant of good faith fails because a party cannot attempt to use an implied covenant to override the express terms of the parties' agreement—and here, YouTube's Terms of Service agreement specifically authorizes YouTube to take the actions that it took. Finally, Plaintiff's false advertising claim under the Lanham Act fails for the same reasons that other courts in this District have dismissed nearly identical claims: Plaintiff cannot point to any concrete, measurable statements made by YouTube in "commercial advertising" that caused harm to Enhanced Athlete. These pleading failures cannot be cured by amendment, and so this case should be dismissed with prejudice.

## I.   FACTUAL BACKGROUND

### A.   The YouTube Service and Terms of Use

YouTube offers a popular online platform that allows users to upload and view videos and related content. Compl. ¶ 12. Before being allowed to post content on YouTube, Plaintiff agreed to YouTube's Terms of Service and Community Guidelines. Under these terms, YouTube "reserves the right to decide whether Content violates [its] Terms of Service" and "reserves the

1  right to remove Content." Ex. 1.[2] YouTube's Community Guidelines, which are incorporated in

2  the Terms of Service, set out twelve "common-sense rules' about prohibited content, including

3  "Harmful or Dangerous Content" which includes "[p]romoting dangerous remedies or cures:

4  [c]ontent which claims that harmful substances or treatments can have health benefits," and

5  "Nudity or sexual content." Ex. 2.

6  **B.       Enhanced Athlete and Its Legal Troubles**

7  Plaintiff Enhanced Athlete is a "health-supplement" company founded by Scott Cavell.

8  Enhanced Athlete employs Anthony C. Hughes a/k/a "Dr. Tony Huge" as its public face and

9  primary spokesperson. *See* Ex. 3 ¶ 2.[3] Plaintiff's videos discuss weight lifting, supplements, and

10 recommends the use of Selective Androgen Receptor Modulators ("SARMs"). Compl. ¶ 26.

11 Plaintiff created and posted videos on YouTube's site related to these products. *Id.* ¶ 27. In addition

12 to these videos, Cavell used Enhanced Athlete and its website enhancedathlete.com to market and

13 sell a dangerous substance, DNP, as a weight loss supplement. *See* Ex. 4 at A-1.

14 Specifically, as alleged by the U.S. Attorney's Office in its criminal prosecution of Cavell,

15 from 2015 through 2017, Cavell "developed a scheme to market and sell a drug, 2,4-Dinitrophenol

16 (also known as DNP), as a weight loss drug and 'fat burner' despite his knowledge that DNP is

17 unapproved by the United States Food and Drug Administration ("FDA") as a substance for human

18 consumption." *Id.* "Cavell accomplished this by selling DNP in pill form but calling it a

19 _____

20 [2] Citations to "Exs. 1-5" are exhibits attached to the Declaration of Brian M. Willen. The
   Complaint alleges that "Plaintiff and Defendants had an agreement in which Defendants agreed to

21 provide YouTube access, hosting, streaming, and advertising services to Plaintiff. This agreement
   was reflected in YouTube's Terms of Use and its Community Guidelines." Compl. ¶¶ 1, 3-9, 34,

22 40, 44, 46. The Complaint thus incorporates by reference the terms, policies, and guidelines
   attached to the Willen declaration, and the Court may consider these documents, attached as Exs.

23 1-2, in ruling on this motion. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

24 [3] Attached as Ex. 3 is Enhanced Athlete's answer in a 2017 civil litigation with a competitor.

25 *Nutrition Distribution, LLC v. Enhanced Athlete, Inc.*, 2:17-cv-01491-TLN-KJN, ECF No. 6 (E.D.
   Cal. Sept. 13, 2017) (Enhanced Athlete Answer to Complaint, at ¶ 2). Also attached as Exs. 4-5

26 are the plea agreement and sentencing order from the criminal case against Cavell in the Eastern
   District of California *United States v. Cavell*, Case No. 2:19-cr-00033-JAM. This Court can take

27 judicial notice of these filings as they are "court filings and other matters of public record." *See
   United States v. Carolina Liquid Chemistries, Corp.*, 2019 WL 3207851, at *4 (N.D. Cal. July 16,

28 2019) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006);
   *accord Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

'fertilizer'—a term under which is it legally sold in other circumstances." *Id.* According to Cavell's plea agreement, while "DNP has been commercially used in the manufacturing of dyes and wood preservatives, as a fertilizer, and as a pesticide," the FDA "has declared that DNP was too toxic to be used for human consumption under any circumstance." *Id.* Indeed, DNP is potentially lethal if taken in too large of a dose. *Id.*

While Cavell sold these products through other websites such as "thefertilizerwarehouse.com," Enhanced Athlete collected the money from these sales. *Id.* Cavell admitted that he set up this structure to "mislead and defraud the… FDA." *Id.* Cavell also admitted that he knew that DNP was not approved for human consumption. *Id.* Cavell's company, Enhanced Athlete, was involved in this scheme: the FDA contacted Enhanced Athlete's management "in an undercover capacity," and Cavell "personally vouched for the effectiveness of DNP as a weight-loss drug." *Id.* at A-2. Cavell eventually pled guilty to violating 21 U.S.C. §§ 331(a), 333(a)(2), with intent to defraud and mislead and cause misbranded drugs to be introduced into interstate commerce. *Id.* He is now serving a 36-month prison term stemming from these charges.

While Plaintiff's legal troubles were mounting, YouTube reviewed certain videos posted on Enhanced Athlete's YouTube channel for compliance with YouTube's terms of service. Applying its policies, YouTube removed a number of those videos for violating the provisions of the YouTube Community Guidelines prohibiting "content that encourages or promotes violent or dangerous acts that have an inherent risk of serious physical harm or death" and for being inappropriate "mature" content. Compl. ¶¶ 3, 9, 33. Ultimately, Plaintiff alleges that YouTube terminated Enhanced Athlete's account. Compl. ¶¶ 9, 32-35. Plaintiff alleges that YouTube's decision to remove its videos and account was unfair and has brought this lawsuit.

## ARGUMENT

To survive a motion under Rule 12(b)(6), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead Plaintiffs must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of

factual allegations." *Prager Univ. v. Google ("Prager I")*, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011)). Nor should the Court accept allegations that contradict documents attached to the Complaint, incorporated by reference, or subject to judicial notice. *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). This rule "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

## II.   Section 230 of the Communications Decency Act Bars Plaintiff's Claims

To facilitate the growth of the Internet and protect the self-regulatory judgments of online service providers, Congress enacted Section 230 of the Communications Decency Act, 47 U.S.C. § 230. *See Batzel v. Smith*, 333 F.3d 1018, 1027–28 (9th Cir. 2003). The statute immunizes online platforms from claims seeking to hold them liable for acting as a "publisher or speaker" of content submitted by another. § 230(c)(1). It also provides a separate immunity against liability specifically for restricting access to content that the service provider or its users consider to be "objectionable." § 230(c)(2)(A). Both of these provisions apply here to bar Plaintiff's claims.[4]

### A.   YouTube Is Protected By Section 230(c)(1)

We begin with Section 230(c)(1), which prohibits any claim that would treat the provider of an "interactive computer service" "as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). This provision "precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—

---

[4] It is well settled that Section 230 protection can be applied on a Rule 12(b)(6) motion where, as here, "the statute's barrier to suit is evident from the face of the complaint." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014); accord *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265-66 (9th Cir. 2016) (applying immunity under Section 230 and affirming grant of motion to dismiss); *Lancaster*, 2016 WL 3648608, at *7 (dismissing claims under Section 230 in a Rule 12(b)(6) motion).

are barred." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *accord Batzel*, 333 F.3d at 1031 n.18.

Courts in this District, and around the country, have repeatedly applied Section 230(c)(1) to dismiss claims that attempt to hold online platforms liable for their decisions about removing or regulating user-submitted content. *See, e.g.*, *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015) (Facebook immune for removing user's page); *King v. Facebook, Inc.*, 2019 WL 4221768, at *3-5 (N.D. Cal. Sept. 5, 2019) *appeal docketed*, No. 20-15188 (9th Cir. Feb. 11, 2020) (same for claims arising from Facebook "removing [plaintiff's] posts, blocking his content, or suspending his accounts"); *Brittain v. Twitter, Inc.*, 2019 WL 110967, at *3 (N.D. Cal. June 10, 2019) (Twitter immune from claims based on "deletion of [plaintiff's] Accounts"); *Domen v. Vimeo, Inc.*, 2020 WL 217048, at *6-8 (S.D.N.Y. Jan. 14, 2020) (same for termination of plaintiff's Vimeo account). This Court did the same in *Lancaster*, a similar case arising from YouTube's removal of a user's videos for terms of service violations. *Lancaster v. Alphabet Inc.*, 2016 WL 3648608, at *3 (N.D. Cal. July 8, 2016) (Gilliam, J.) ("the Court holds that § 230(c)(1) of the CDA precludes as a matter of law any claims arising from Defendants' removal of Plaintiff's videos").

In *Lancaster*, this Court followed the established three-part for 230(c)(1) immunity: "§ 230(c)(1) bars a plaintiff's claim if (1) the defendant is a 'provider or user of an interactive computer service'; (2) the information for which the plaintiff seeks to hold the defendant liable is 'information provided by another information content provider'; and (3) the plaintiff's claim seeks to hold the defendant liable as 'the publisher or speaker' of that information. *Id*. at *2-3 (citing *SFJ*, 144 F. Supp. 3d at 1092-93); *accord Barnes v. Yahoo!, Inc.*, 570 F. 3d 1096, 1100-01 (9th Cir. 2009). Just as in *Lancaster*, each of these elements is met here.

*First*, it is indisputable that YouTube and Google qualify as interactive computer services, because they "provide[] or enable[] computer access by multiple users to a computer service." *SFJ*, 144 F. Supp. 3d at 1093. *See Gonzalez v. Google LLC*, 335 F. Supp. 3d 1156, 1169 (N.D. Cal. 2018) *appeal docketed,* No. 18-16700 (9th Cir. Sept. 10, 2018); *see also Lancaster*, 2016 WL 3648608 at *3.

*Second*, Plaintiff's claims are plainly based on content it produced and uploaded to YouTube. There is no allegation (nor could there be) that YouTube created or developed the content at issue. Compl. ¶¶ 26-27. Because that content was all "provided by another information content provider," Section 230(c)(1) applies. 47 U.S.C. § 230(c)(1); *SFJ*, 144 F. Supp. 3d at 1094-95; *Lancaster*, 2016 WL 3648608, at *3.

*Third*, Plaintiff seeks to hold YouTube liable in its capacity as a publisher—that is, for the "exercise of a publisher's traditional editorial functions." *Zeran*, 129 F.3d at 330. As the Ninth Circuit has explained, "publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes*, 570 F.3d at 1102. It follows that "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Id.* (quoting *Roommates.com, LLC*, 521 F.3d at 1170-71). That is precisely the situation here. Plaintiff's whole complaint attacks Google's decision to remove Plaintiff's video content for violating YouTube's community guidelines and terms of service, and Google's refusal to reinstate this content. *See* Compl. ¶¶ 24, 30-36. As in *Lancaster*, *SFJ*, and the other cases discussed above, this falls squarely within Section 230's protections. *Lancaster*, 2016 WL 3648608, at *3-4 (dismissing claims based on YouTube's removal of videos because "to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher"); *SFJ*, 144 F. Supp. 3d at 1095 ("removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher"); *accord Domen,* 2020 WL 217048, at *6 ("Vimeo plainly was acting as a 'publisher' when it deleted (or, in other words, withdrew) Plaintiffs' content on the Vimeo website") (citing *Barnes*, 570 F.3d at 1102).

## B.   Section 230(c)(2) Independently Bars Plaintiff's Claims

Section 230(c)(2) provides an additional independent basis for dismissal. That provision establishes that "[n]o provider or user of an interactive computer service shall be held liable on account of … any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively

violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." 47 U.S.C. § 230(c)(2)(A).

The recent decision in *Domen* is directly on point. Like this case, *Domen* was a lawsuit brought against an online video-hosting platform after Vimeo "applied its Guidelines to remove Plaintiff['s] videos, since such videos violated the Guidelines." 2020 WL 217048, at *9. The court explained that Section 230(c)(2)(A) provides online service providers with immunity to "police content" on their site. *Id*. at *7. Because the plaintiff sought to "hold Vimeo liable for the actions voluntarily taken by Vimeo to restrict access to Plaintiffs' materials that Vimeo finds to be objectionable," the claims were barred by Section 230(c)(2)(A)—on top of the immunity the court had found applicable under Section 230(c)(1). *Id.* The same result is warranted here. As in *Domen*, YouTube removed Enhanced Athlete's videos for violating YouTube's Terms of Service and Community Guidelines. That decision was an "action voluntarily taken in good faith to restrict access to or availability of material" that YouTube considered to be "harassing" or "otherwise objectionable." § 230(c)(2)(A). *Id.*; *accord e360Insight, LLC v. Comcast Corp.*, 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008) (online service provider protected from liability under 230(c)(2) for decision to block spam emails); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 630-31 (D. Del. 2007) (section 230(c)(2) barred claims arising from removal of Google Ads).[5]

### III.   Plaintiff Fails to State a Claim for Relief

Apart from the broad protections afforded by Section 230, Plaintiff has not stated a viable claim for any of the causes of action it asserts. Plaintiff's claims for unfair competition[6], breach of the implied covenant, and under the Lanham Act fail as a matter of law.

---

[5] Also as in *Domen*, Plaintiff has not offered any non-conclusory allegations that YouTube "failed to act in good faith." *Domen*, 2020 WL 217048, at *8; *accord Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1105 (N.D. Cal. 2011) (allegations that Defendant's filtering decisions were "motivated by profit" insufficient to show "an absence of good faith.") (citing *e360Insight, LLC*, 546 F. Supp. 2d at 609). Here, a Plaintiff's vague statement that YouTube was motivated by advertising revenue to remove Plaintiff's videos—beyond being inexplicable on its face—does not establish a lack of good faith. Compl. ¶ 36. Even if monetary considerations were part of why YouTube did what it did, that would not amount to bad faith.

[6] Plaintiff styles its first cause of action as "unfair competition" without specifically referencing California's Unfair Competition Law, Bus. Prof Code § 17200 *et. seq.* ("UCL"). While there is a
(continued...)

### A.      Plaintiff Fails to State a Claim Under the UCL

The UCL "establishes three varieties of unfair competition"—unlawful, unfair, or fraudulent. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Plaintiff fails to allege a claim under any of the prongs.

*First*, Enhanced Athlete cannot sustain a claim under the "unlawful" prong because the Complaint does not state a claim against Google for any predicate unlawful act. *See id.* (explaining that the "unlawful" prong "'borrows' violations of other laws and treats them as unlawful practices"); *e.g.*, *Oracle Am., Inc. v. Cedarcrestone, Inc.*, 938 F. Supp. 2d 895, 908 (N.D. Cal. 2013) (dismissing UCL unlawfulness claim where underlying antitrust claim dismissed). The only violation of law Plaintiff alleges is under the Lanham Act, but that claim fails for the reasons discussed below.[7]

*Second*, Plaintiff cannot sustain a claim under the unfair or fraudulent prongs. Plaintiff seems to allege that Google acted unfairly and/or fraudulently by encouraging users to use the YouTube platform, and then enforcing its terms of service in a manner Plaintiff deems "subjective, baseless, arbitrary, or unfair." Compl. ¶ 28. Plaintiff's allegations are threadbare and conclusory at best. The Complaint does not identify, much less with the particularity required by Federal Rule of Civil Procedure 9(b), any specific false or misleading statements that could support a claim grounded in fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) (Rule

---

common law tort for "unfair competition," it does not apply here, as that tort "is generally thought to be synonymous with the act of 'passing off' one's goods as those of another." *Dyson, Inc. v. Garry Vacuum, LLC*, 2010 WL 11595882, at *9 (C.D. Cal. July 19, 2010) (citing *Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1263 (1992). Because Plaintiff's claim appears intended to be brought under the UCL, Google will treat this as a claim under section 17200.

[7] Plaintiff also seems to hint at—without actually asserting—a claim that Google violated its free speech rights. Compl. ¶¶ 1-3, 5-7. Plaintiff likely did not bring a claim for a violation of its First Amendment rights because, as numerous courts have held, private online service providers like YouTube are not state actors. *See e.g., Prager Univ. v. Google*, 2020 WL 913661, at *4-5 (9th Cir. Feb. 26, 2020) (affirming dismissal of First Amendment claim against Google and YouTube); *Green v. YouTube, LLC*, 2019 WL 1428890, at *4 (D.N.H. Mar. 13, 2019) (same); *Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *6 (N.D. Cal. May 9, 2019) (dismissing constitutional claim against Facebook for failure to establish that Facebook is a state actor). Plaintiff's vague allegations about a right to speak freely on YouTube certainly cannot support a claim under the "unlawful" prong of the UCL.

9(b) applies to UCL claims where "the averments in the complaint necessarily describe fraudulent conduct, Rule 9(b) applies to those averments."); *Dyson, Inc. v. Garry Vacuum, LLC*, 2010 WL 11595882, at *5 (C.D. Cal. July 19, 2010) (applying Rule 9(b) to claims under the UCL). Instead, Plaintiff merely repeats that it has "basic rights" to "speak freely without content-based restrictions." Compl. ¶ 28. But nothing in YouTube's Terms of Service or Community Guidelines suggest that Plaintiff has unfettered rights to speech on the YouTube platform. To the contrary, as discussed below, these provisions expressly limit what kinds of content users can post on YouTube and give broad discretion to YouTube to remove user content or terminate user accounts that YouTube determines violates its rules. *See* Ex. 1.

Plaintiff also alleges that YouTube acts unfairly by removing videos or accounts that YouTube deems to be not "advertiser friendly." Compl. ¶¶ 7, 9. This is doubly mistaken. YouTube's advertiser guidelines have nothing to do with this case: those guidelines simply restrict the set of videos that are eligible to have advertising run on them. Here, Plaintiff's claims arise from the removal of its videos for violation of YouTube's Community Guidelines, not from the application of YouTube's advertising policies. In any event, any claim based on YouTube's advertising guidelines would fail as well, as other courts have found. *See e.g., Prager Univ. v. Google LLC ("Prager II")*, No. 19CV340667, 2019 Cal. Super. LEXIS 2034, at *31-35 (Cal. Super. Ct. Nov. 19, 2019) (rejecting UCL claim predicated on YouTube's advertising terms). There is nothing fraudulent or unfair about YouTube limiting the universe of videos that can be monetized with advertisements.

*Third*, while the complaint is not clear, it gestures at a claim that YouTube's actions somehow harm competition. Compl. ¶ 36. Such a claim would require factual allegations that show an "actual or threatened impact on competition." *Cel-Tech*, 20 Cal. 4th at 186-87. Plaintiff does not come close to meeting this standard, instead generally alleging that Enhanced Athlete has been injured by losing access to its YouTube channel, and that the public has been "misled" about YouTube's "actual motivation in restricting videos and terminating accounts." Compl. ¶ 39. That is not enough. Plaintiff offers no allegations that Google's actions had any broader impact on competition. *See e.g. Levitt v. Yelp! Inc.*, 765 F.3d 1123,1136 (9th Cir. 2014) (general allegations

1    that Yelp!'s conduct "harms competition" by favoring certain businesses insufficient to state a

2    claim under the UCL).

3        **B.      Plaintiff Cannot Use the Implied Covenant to Rewrite the Parties' Actual Agreement**

4

5        Plaintiff next claims that YouTube breached an implied covenant of good faith and fair

6    dealing by removing Plaintiff's videos from YouTube. Compl. ¶ 39. This claim fails as a matter

7    of law. It is black-letter law that no breach of the implied covenant can occur where the governing

8    contract "expressly authorized" the defendant's actions. *Storek & Storek, Inc. v. Citicorp Real*

9    *Estate, Inc.*, 100 Cal. App. 4th 44, 56-57 (2002); *see also Carma Developers (Cal.), Inc. v.*

10   *Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992) ("As to acts and conduct authorized by the

11   express provisions of the contract, no covenant of good faith and fair dealing can be implied which

12   forbids such acts and conduct."). Put simply, the implied covenant "cannot impose substantive

13   duties or limits on the contracting parties beyond those incorporated in the specific terms of their

14   agreement." *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349-50 (2000).

15       Enhanced Athlete does not allege any conduct on YouTube's part that was not expressly

16   authorized by the contractual terms the Plaintiff agreed to when signing up to use YouTube. The

17   Terms of Service give YouTube "the right to remove Content without prior notice" and "to decide

18   whether Content violates [its] Terms of Service." Ex. 1. YouTube may also "at any time, without

19   prior notice and in its sole discretion, remove such Content and/or terminate a user's account for

20   submitting such material in violation of these Terms of Service." *Id.* In addition, YouTube may

21   "discontinue any aspect of the Service at any time." *Id.* Because these express contractual

22   provisions authorized YouTube to take the specific actions that it took, Plaintiffs' claim for breach

23   of the implied covenant must be dismissed. *See Prager II*, 2019 Cal. Super. LEXIS 2034, at *31-

24   32 (dismissing similar implied-covenant claim against YouTube); *cf. Sweet v. Google Inc.*, 2018

25   WL 1184777, at *9-10 (N.D. Cal. Mar. 7, 2018) (YouTube's decision not to allow plaintiff to

26   monetize videos did not violate implied covenant because Terms of Service expressly authorized

27   Google to withhold ads from videos). Plaintiff cannot use an implied covenant to *override*

28   YouTube's express rights under the parties' agreements.

Finally, Plaintiff also does not offer any non-conclusory allegations that YouTube actually acted in bad faith in enforcing its terms and conditions. Instead, Plaintiff vaguely alleges that YouTube engaged in an "advertiser friendly purge," (Compl. ¶ 46) but this is not enough "to support a reasonable finding" that YouTube removed Plaintiff's videos and channel "in bad faith." *Lancaster*, 2016 WL 3648608, at \*5 (dismissing claim for breach of implied covenant, for, among other reasons, failure to plead bad faith by YouTube).

### C.   Plaintiff Fails to State a Claim Under the Lanham Act

Plaintiff's Lanham Act claim is predicated on the theory that Google engaged in false advertising by "advertis[ing] YouTube as a forum for open expression by diverse speakers while unilaterally terminating those whose posts may be somewhat controversial." Compl. ¶ 50. This is nearly identical to the claim rejected in the Ninth Circuit's very recent controlling decision in *Prager Univ.* 2020 WL 913661, at \*5-6 ("*Prager III*"). The claim here fails for the same reasons.

*First*, Plaintiff cannot identify the most basic prerequisite for any false advertising claim under the Lanham Act: an actual statement—that is, a "false or misleading description of fact" or "false or misleading representation of fact"—that was likely to mislead the public. 15 U.S.C. § 1125(a)(1). Because such claims sound in fraud, Rule 9(b) applies and requires Plaintiff to plead "the who, what, when, where, and how" of the misrepresentation. *Khoja*, 899 F.3d at 1008; *see also Vess*, 317 F.3d at 1102-04 (Rule 9(b) applies to claims that "sound in fraud"); *Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1095 (S.D. Cal. 2017) (applying Rule 9(b) to Lanham Act false advertising claim). Plaintiff's Complaint does not identify any actual statements, much less with particularity.

The closest that Plaintiff comes is the allegation that YouTube somehow made a statement "that Plaintiff's videos were terminated because they violated guidelines preventing 'conduct that encourages or promotes violent or dangerous acts that have an inherent risk of serious physical harm or death.'" Compl. ¶ 50. But the Complaint points to no *public* statement YouTube made conveying this message. What Plaintiff seems to be referencing was YouTube's *private* communication to Enhanced Athlete. Compl. ¶ 35. As the Ninth Circuit held in *Prager III*, this kind of private statement is simply not actionable under the Lanham Act. *See* 2020 WL 913661 \*5

(explaining that YouTube's statements about the "designation and the reason for tagging videos to be unavailable" was not actionable under the Lanham Act because they "are not made available to the public") (citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)) *accord G.U.E. Tech, LLC v. Panasonic Avionics Corp.*, 2016 WL 6138422, at *5 n.1 (C.D. Cal Feb 4, 2016) (private statements made by defendant do not qualify under Lanham Act because they were not 'disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion.").

Nor could Plaintiff claim that any statements about YouTube content guidelines or its reasons for removing the Plaintiff's videos constitutes "commercial advertising or promotion." The Ninth Circuit rejected exactly this theory in *Prager*, holding that "YouTube's statements concerning its content moderation policies do not constitute 'commercial advertising or promotion'" because they were not made "for a promotional purpose to 'penetrate the relevant market.'" 2020 WL 913661, at *5; *accord Darnaa, LLC v. Google, Inc.*, 2015 WL 7753406, at *3 (N.D. Cal. Dec. 2, 2015) (rejecting Lanham Act claim based on "YouTube's posting of a notice that [a] video had been removed because it violated YouTube's Terms of Service").

*Second*, the Complaint refers vaguely to certain generic statements made by YouTube about its service: "YouTube holds itself out as a place 'where everyone's voice can be heard' and it professes to give 'people opportunities to share their voice and talent no matter where they are from or what their age or point of view.'" Compl. ¶ 25. Insofar as Plaintiff seeks to base its Lanham Act claims on such statements (which is far from clear), that effort fails as a matter of law. These statements, as the Ninth Circuit very recently affirmed, are classic examples of non-actionable puffery. *Prager Univ.*, 2020 WL 913661 *6 (explaining that "[l]ofty but vague statements like 'everyone deserves to have a voice,'" and that "'people should be able to speak freely'" are "classic, non-actionable opinions or puffery").[8]

---

[8] Finally, Because Plaintiff's claim for declaratory relief (Count IV) is predicated on its other claims for relief—all of which are both barred by federal law and fail on their own terms—it too must be dismissed. *See, e.g., Karimi v. GMAC Mortg.*, 2011 WL 5914006, at *6 (N.D. Cal. Nov. 28, 2011).

1

## CONCLUSION

2   Plaintiff's lawsuit is an improper attempt to compel YouTube to reinstate videos posted by

3   a company whose CEO is an admitted fraudster and which markets potentially dangerous

4   substances banned by the FDA. Plaintiff's claims fail as a matter of law and should be dismissed

5   with prejudice.

6

7   Dated: March 2, 2020                    WILSON SONSINI GOODRICH & ROSATI

8                                           Professional Corporation

9
                                            By: */s/ Brian M. Willen*
10                                              Brian M. Willen

11                                              *Attorneys for Defendants*
                                                GOOGLE LLC and YouTube LLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28