UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENHANCED ATHLETE INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC, et al.,<br><br>Defendants. | Case No. 19-cv-08260-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

Pending before the Court is a motion to dismiss filed by Defendants Google LLC and YouTube, LLC. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motion.

## I. BACKGROUND

Plaintiff Enhanced Athlete Inc. filed this action on December 19, 2019, challenging Defendants' decisions to remove Plaintiff's videos from YouTube and ultimately terminate Plaintiff's YouTube accounts. *See generally* Dkt. No. 1 ("Compl."). Plaintiff alleges that it posted informational and educational videos concerning personal fitness and overall well-being on its two YouTube channels. *Id.* at ¶¶ 1, 9, 11, 26–27. Plaintiff explains that prior to Defendants terminating Plaintiff's accounts, it had posted "nearly 200 videos" and had accrued a total of approximately 145,000 subscribers. *Id.* at ¶ 11. Although Plaintiff does not describe the specific content of any of these videos, Plaintiff indicates that at least some of its videos contained information regarding "Selective Androgen Receptor Modulators (SARMS)," which are not regulated and have not been approved by the FDA for human consumption. *See id.* at ¶ 26. Although "potentially controversial," Plaintiff contends that its videos were "perfectly legal" and

contained "non-offensive topics." *Id.* at ¶ 34. As such, Plaintiff argues that its videos "were in full compliance with YouTube's Terms of Use and Community Guidelines." *See id.* at ¶ 9. Plaintiff further notes that Defendants did not raise any concerns with its videos for months, and in some instances, several years. *See, e.g.*, *id.* at ¶¶ 9, 30.

Rather than adhering to their own Terms of Use and Community Guidelines, however, Plaintiff contends that Defendants apply some kind of arbitrary "advertiser friendly" criteria. *See id.* at ¶¶ 28–29, 32–33. Plaintiff states that in an effort to preserve its accounts, it subsequently "deleted certain videos just to be sure [such] guidelines were met." *Id.* at ¶ 33. Nevertheless, Defendants still "deemed those deleted videos objectionable and struck them." *Id.* at ¶ 34. Plaintiff suggests that Defendants also considered these deleted videos in finding that Plaintiff had "three strikes in three-months" and thus permanently terminated Plaintiff's YouTube channels. *See id.* at ¶¶ 33–34. Plaintiff further alleges that when it asked Defendants to explain their actions, Defendants provided vague or boilerplate responses, claiming that the videos "promot[ed] violent or dangerous acts that have an inherent risk of serious physical harm or death." *Id.* at ¶ 33.

Plaintiff explains that it filed this action "to stop Defendants from unlawfully censoring its educational and informational videos, and discriminating against its right to freedom of speech, for arbitrary and capricious reasons that are contrary to Defendants' own published Community Guidelines and Terms of Use." *See id.* ¶ 1. Based on these facts, Plaintiff asserts causes of action for (1) unfair competition, in violation of California's Unfair Competition Law, Bus. Prof Code §§ 17200 *et seq.*; (2) breach of the implied covenant of good faith and fair dealing; (3) false advertising, in violation of the Lanham Act, 15 U.S.C. §§ 1125, *et seq.*; and (4) declaratory relief. *See id.* at ¶¶ 37–55.

Defendants move to dismiss the complaint in its entirety, arguing that Plaintiff's claims are barred by § 230 of the Communications Decency Act, 47 U.SC. § 230(c) ("CDA"), and in the alternative, that Plaintiff fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. No. 18 at 2–3.

//

//

## II. DISCUSSION

The Court first addresses Defendants' argument that Plaintiff's causes of action are barred by Section 230 of the CDA, and then evaluates any remaining causes of action under Rule 12(b)(6).

### A. The Communications Decency Act

#### i. Legal Standard

Section 230 of the Communications Decency Act is designed "to promote the free exchange of information and ideas over the Internet and to encourage voluntary monitoring for offensive or obscene material." *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003) (47 U.S.C. §§ 230(b)(1)–(2), (4)–(5)). Section 230(c) states:

> Protection for "Good Samaritan" blocking and screening of offensive material
>
> (1) Treatment of publisher or speaker: No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.
>
> (2) Civil liability: No provider or user of an interactive computer service shall be held liable on account of –
>
> (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
>
> (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c). Section 230(c)(1) therefore immunizes providers of interactive computer services against any claims that would treat them as a "publisher or speaker." *Id.* at § 230(c)(1). And Section 230(c)(2), in turn, immunizes such providers against claims for policing content. *Id.* at § 230(c)(2). Defendant contends that Plaintiff's claims are barred by both Section 230(c)(1) and Section 230(c)(2).

### ii. Section 230(c)(1)

Section 230(c)(1) bars a plaintiff's claim if (1) the defendant is a "provider or user of an interactive computer service"; (2) the information for which the plaintiff seeks to hold the defendant liable is "information provided by another information content provider"; and (3) the plaintiff's claim seeks to hold the defendant liable as "the publisher or speaker" of that information. *See Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1092–93 (N.D. Cal. 2015) (quoting 47 U.S.C. § 230(c)(1)).

Plaintiff does not appear to contest that Defendants are providers of an "interactive computer service." *See generally* Dkt. No. 24. Nor could it. An "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." *See* 47 U.S.C. § 230(f)(2). YouTube and Google readily fall within this definition. Similarly, Plaintiff does not appear to contest, and the Court finds, that Plaintiff's YouTube videos are "information provided by another information content provider." *See id.* at § 230(c)(1). Under the three-prong test outlined in *Sikhs*, therefore, the only outstanding issue is whether Plaintiff's causes of action seek to hold Defendants liable as the "publisher or speaker" of Plaintiff's videos.

To determine whether a claim seeks to treat a defendant as a "publisher or speaker," the Ninth Circuit has instructed that "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a "publisher or speaker." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009), *as amended* (Sept. 28, 2009). The Ninth Circuit has further clarified that "publication involves reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *See id.*; *see also Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008) (en banc) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is performance immune under section 230."). Thus, "a publisher reviews material submitted for publication, perhaps edits it for style or technical

4

fluency, *and then decides whether to publish it*." *Barnes*, 570 F.3d at 1102 (emphasis added).

In *Barnes*, however, the Ninth Circuit also distinguished contractually-based causes of action. The plaintiff in *Barnes* asserted, *inter alia*, a cause of action for promissory estoppel. *See id.* at 1106–07. The plaintiff alleged that the defendant had promised to take down third-party content from a website, but had failed to do so. *See id.* at 1099, 1106–07. The Court held that Section 230(c)(2) does not preclude liability in such circumstances because "the duty the defendant allegedly violated springs from a contract—an enforceable promise—not from any non-contractual conduct or capacity of the defendant." *Id.* at 1107. Although the promise at issue in *Barnes* was to take down content from its website, which the Ninth Circuit acknowledged was "quintessential publisher conduct," the Court reasoned that liability for the promissory estoppel claim derived "not from Yahoo's publishing conduct, but from Yahoo's manifest intention to be legally obligated to do something, which happens to be removal of material from publication." *Id*. at 1107.

Here, Plaintiff does not contest that three of its four causes of action are barred by Section 230(c)(1). *See* Dkt. No. 24 at 6–7 (arguing only that its "claim for breach of the implied covenant of good faith and fair dealing is not subject to bar by reason of § 230(c)(1) as it does not seek to impose liability on Defendants as 'publishers or speakers' under the statute"). And the Court finds that Plaintiff's causes of action for (1) unfair competition; (2) false advertising; and (3) declaratory relief seek to hold Defendants liable as a publisher. Plaintiff's complaint makes this clear, alleging that "Plaintiff brings this lawsuit to stop Defendants from unlawfully censoring its educational and informational videos, and discriminating against its right to freedom of speech . . . ." *See* Compl. at ¶¶ 1, 37–42, 48–55. In short, Plaintiff challenges Defendants' decision to remove Plaintiff's videos and terminate its accounts. *Id.* Yet "removing content is something publishers do, and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher." *Barnes*, 570 F.3d at 1103.

However, the Court finds that Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing is based in contract, and thus is not precluded by Section 230(c)(1). According to Plaintiff's complaint, the parties entered into an agreement—as "reflected in

5

YouTube's Terms of Use and its Community Guidelines"—which grants Defendants "unfettered" and "unilateral" discretion to remove content and terminate YouTube accounts. *See* Compl. at ¶ 44. Despite Plaintiff's adherence to the terms of the agreement, Plaintiff asserts that Defendants interfered with "Plaintiff's right to receive the benefit of its agreement" when it "arbitrarily" terminated Plaintiff's accounts. *See, e.g.*, *id.* at ¶ 47. As discussed in more detail in Section II.B below, the Court shares Defendants' skepticism regarding the viability of this cause of action. But contrary to Defendants' urging, the Ninth Circuit did not premise its holding in *Barnes* on the "promissory character" of the plaintiff's contractual claim. *See* Dkt. No. 25 at 5. Rather, the Ninth Circuit looked to the source of the defendant's alleged duty. *See Barnes*, 570 at F.3d at 1107.

Plaintiff's theory here—whether or not it ultimately proves meritorious—is premised on Defendants' interference with the parties' agreement (*i.e.*, the Terms of Use and Community Guidelines). Thus, although the breach of the implied covenant of good faith and fair dealing claim is based on the same factual allegations that Defendants removed Plaintiff's videos and terminated its accounts, the claimed source of liability is different. *See Barnes*, 570 F.3d at 1107. "[T]he duty the defendant[s] allegedly violated springs from a contract" and not Defendants' status as a publisher. *Id.* The Court therefore finds that Section 230(c)(1) does not preclude this cause of action. *Accord Darnaa, LLC v. Google, Inc.*, No. 15-cv-03221-RMW, 2016 WL 6540452 at *8 (N.D. Cal. Nov. 2, 2016) (denying motion to dismiss implied covenant claim based on Section 230(c)(1)).[1]

### iii.    Section 230(c)(2)

Defendants also argue that Plaintiff's causes of action are barred by Section 230(c)(2). *See* Dkt. No. 18 at 8–9. Section 230(c)(2) provides immunity to providers and users of interactive

---

[1] Defendants rely heavily on this Court's opinion in *Lancaster v. Alphabet Inc.*, No. 15-CV-05299-HSG, 2016 WL 3648608, at *5 (N.D. Cal. July 8, 2016). However, *Lancaster* was a pro se case with an approximately 200-page complaint, which substantially complicated the analysis (and even the identification) of that plaintiff's various claims. In any event, having reexamined the Ninth Circuit's opinion in *Barnes*, the Court finds that a breach of implied covenant claim, because it is based in contract rather than a defendant's status as a publisher, is not barred by Section 230(c)(1).

6

1  computer services for "any action voluntarily taken in good faith to restrict access to or
2  availability of material that the provider or user considered to be obscene, lewd, lascivious, filthy,
3  excessively violent, harassing, or otherwise objectionable, whether or not such material is
4  constitutionally protected." *See* 42 U.S.C. 230(c)(2)(A). Section 230(c)(2) thus provides
5  immunity to defendants to "police content," provided they do so in good faith.

The Court finds that Plaintiff has alleged sufficient facts to support its claim that Defendants did not act in good faith. Plaintiff alleges:

- Plaintiffs' videos "were in full compliance with YouTube's Terms of Use and Community Guidelines," and had appeared on Plaintiff's accounts for months or even years without Defendants raising any concerns about their content. *See* Compl. at ¶¶ 9, 30, 34.
- Plaintiff sought guidance from Defendants regarding how to comply with their expectations and interpretation of the Terms of Use, but Defendants refused to assist. *See id.* at ¶¶ 31, 35.
- Defendants refused to provide Plaintiff with a coherent explanation as to why they were striking Plaintiff's videos and terminating its accounts. *See id.* at ¶¶ 8, 33.
- Defendants were in fact striking videos and terminating accounts that were not considered "advertiser friendly" to enhance Defendants' own financial benefit. *See, e.g.*, *id.* at ¶¶ 7–8, 28–29, 35.
- When deciding to terminate Plaintiff's accounts, Defendants considered even those videos that Plaintiff had voluntarily deleted. *See id.* at ¶ 34.

At this stage in the litigation, the Court must accept as true Plaintiff's allegations in the complaint, and draw all inferences in the light most favorable to Plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). As such, the Court finds that Plaintiff has alleged bad faith such that the Court cannot dismiss Plaintiff's breach of implied covenant claim on the basis of Section 230(c)(2) at this time.

**B.  Rule 12(b)(6)**

The Court next evaluates whether Plaintiff has stated a viable claim for breach of the implied covenant of good faith and fair dealing under Rule 12(b)(6).

7

i.  **Legal Standard**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

ii.  **Analysis**

Under California law, "[e]very contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement." *Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409, 429 (Cal. Ct. App. 2012) (quotations omitted). The covenant exists to ensure that "each party [does] not [] do anything which will deprive the other parties thereto of the benefits of the contract." *Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (Cal. Ct. App. 1960). A party cannot interfere with the performance of the contract and it must do "everything that the contract presupposes that he will do to accomplish its purpose." *Id.*

The implied covenant does not alter a party's existing rights or duties under a contract. *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 327, 349–52 (Cal. 2000) ("[W]hile the implied covenant requires mutual fairness in applying a contract's actual terms, it cannot substantively alter those

8

terms."). Rather, the implied covenant supplements "the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Avidity Partners, LLC v. State*, 221 Cal. App. 4th 1180, 1204 (Cal. Ct. App. 2013) (quotation omitted). Accordingly, "if defendants were given the right to do what they did by the express provisions of the contract there can be no breach." *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 56 (Cal. Ct. App. 2002) (citation omitted).

Here, Plaintiff alleges that "Plaintiff and Defendants had an agreement in which Defendants agreed to provide YouTube access, hosting, streaming, and advertising services to Plaintiff," and that "[t]his agreement was reflected in YouTube's Terms of Use and its Community Guidelines." *See* Compl. at ¶ 44. Plaintiff reasons that the implied covenant of good faith and fair dealing was implicit in the agreement, and that Defendants breached this implied covenant. More specifically, Plaintiff alleges that Defendants breached the implied covenant "by destroying Plaintiff's right to receive the benefit of its agreement with Defendants and thereby completely disrupting Plaintiff's communication with its followers and eliminating Plaintiff's livelihood" when it deleted Plaintiff's videos and accounts. *Id.* at ¶¶ 45–47. Defendants counter that Plaintiff's allegations attempt to override the express terms—and Defendants' express authority—under the Terms of Use. *See* Dkt. No. 18 at 12–13.

As a threshold matter, the parties appear to disagree as to whether the Court may consider Defendants' Terms of Use and Community Guidelines when deciding the instant motion. *Compare* Dkt. No. 18 at 4, n.2 and Exs. 1–2, *with* Dkt. No. 24 at 3. The incorporation by reference doctrine allows a court "to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quotations omitted). Here, the Terms of Use and Community Guidelines—which Defendants attached as exhibits to their motion to dismiss—"form[] the basis" of Plaintiff's claim that Defendants breached the implied covenant of good faith and fair dealing inherent in these agreements, and are in fact specifically identified in the complaint. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Although Plaintiff

9

argues that "any ambiguity in the documents must be resolved in plaintiff's favor," Plaintiff does not question their authenticity. *See* Dkt. No. 24 at 3. The Court therefore finds these documents incorporated by reference.[2]

According to these agreements, Defendants have the right "to decide whether Content violates th[e] Terms of Service," and "at any time, without prior notice and in [their] sole discretion, [to] remove such Content and/or terminate a user's account for submitting such material in violation of these Terms of Service." *See* Dkt. No. 18-2, Ex. 1 at §§ 6(E), 7(B). Defendants may also "discontinue any aspect of the Service at any time." *See id.* at § 4(J). The Community Guidelines, in turn, state that "[v]ideos showing [] harmful or dangerous acts may get age-restricted or removed depending on their severity." *See* Dkt. No. 18-3, Ex. 2 at 3. By the terms of these agreements, therefore, Defendants have "sole discretion" to determine whether Plaintiff's videos were harmful or dangerous, or otherwise violated the Terms of Use and Community Guidelines, and to "discontinue" service "at any time." That Plaintiff may have disagreed with their reasoning, or lost revenue as a result, is simply inapposite. *See, e.g.*, *Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) (dismissing claimed breach of the implied covenant of good faith and fair dealing based on the language in the Terms of Service where defendant removed a YouTube video).

Despite suggesting some "ambiguity in the documents," *see* Dkt. No. 24 at 3, Plaintiff does not identify any such ambiguities. Plaintiff merely states in conclusory fashion that Defendants raise "improper factual argument at this stage which Plaintiff clearly disputes as alleged in the Complaint." *See id.* at 10. But Plaintiff may not, through allegations in the complaint, undermine the plain language of the parties' agreement. *See Guz*, 24 Cal. 4th at 327, 349–52. To the extent Plaintiff suggests that allowing Defendants to determine whether to delete videos or terminate accounts in their sole discretion is unconscionable, *see* Compl. at ¶ 30, Plaintiff makes no

---

[2] The Court also notes that under the Local Rules, "[a]ny evidentiary and procedural objections to the motion must be contained within the brief or memorandum." *See* Civil L.R. 7-3(a). However, Plaintiff raised objections in a separate document, *see* Dkt. No. 24-1, which is improper. The Court therefore **STRIKES** Dkt. No. 24-1 from the docket. The Court cautions Plaintiff that moving forward, the Court expects it to fully comply with the Local Rules.

showing—either in the complaint or in opposition to the motion to dismiss—that the Terms of Use and Community Guidelines were procedurally or substantively unconscionable. Because the Court finds that the parties' agreements authorized Defendants, in their discretion, to remove Plaintiff's videos and delete its accounts, the Court finds that Plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing.

### III. CONCLUSION

Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's complaint in its entirety. The Court **DISMISSES WITH PREJUDICE** Plaintiff's claims for unfair competition in violation of California's Unfair Competition Law, Bus. Prof Code §§ 17200 *et seq.*; false advertising in violation of the Lanham Act, 15 U.S.C. §§ 1125, *et seq.*; and declaratory relief. However, the Court is mindful that "[t]he court should freely give leave [to amend] when justice so requires." *See* Fed. R. Civ. P. 15. And the Ninth Circuit has emphasized that "[t]his policy is to be applied with extreme liberality." *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). Thus, the Court **DISMISSES WITH LEAVE TO AMEND** Plaintiff's remaining claim for breach of the implied covenant of good faith and fair dealing. Plaintiff shall file an amended complaint within 21 days of the date of this order if it can do so consistent with its Rule 11 obligations. Plaintiff may not add any additional defendants or new claims.

**IT IS SO ORDERED.**

Dated: 8/14/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge